[No. 26045. *En Banc.* March 3, 1936.]

THE STATE OF WASHINGTON, *on the Relation of Harvey O. Scofield et al., Plaintiff*, v. FERD J. SCHAAF *et al., Respondents.*[1]

[1]Reported in 54 P. (2d) 1014.

*Harry H. Johnston* and *John E. Belcher,* for relators.

*The Attorney General* and *Don Cary Smith, Assistant (Frederick J. Lordan* and *Will M. Derig,* of counsel), for respondents Schaaf *et al.*

*Charles T. Peterson,* for respondent Washington Navigation Company.

*Poe, Falknor, Falknor & Emory, amicus curiae.*

MITCHELL, J.—On or about December 26, 1935, the Washington Navigation Company, a corporation, was, and for a number of years had been, the holder of certificates of public convenience and necessity, issued after the effective date of chapter 248, Laws of 1927, p. 382, Rem. Rev. Stat., §§ 10361-1, 10361-2 [P. C. §§ 5552-1, 5552-2], for the operation of ferry boats over and across the waters of Puget Sound over several routes, each of which routes is altogether or partly within Pierce county. On that day, the navigation company filed a schedule of rates, fares and charges with the department of public service of the state, to become effective January 20, 1936. Thereupon and prior to January 20, 1936, the board of

county commissioners of Pierce county commenced this action against the state officers constituting the department of public service to prohibit the department from entertaining jurisdiction over the ferry operations of the Washington Navigation Company in Pierce county. In the complaint, the Washington Navigation Company is joined as a party defendant. Each of the defendants has filed an answer, to which the plaintiff has replied. The pleadings set out some apparently unnecessary matters, but they also set out enough facts to present, on behalf of the respective parties, the controlling question in the case.

That question, fairly stated in plaintiff's brief, is as follows:

"This is an original application filed in the supreme court for a writ of prohibition against state officers, constituting the department of public service, to prevent the exercise of the threatened assumption of jurisdiction over ferries operating wholly within the limits of Pierce county, which jurisdiction is, and for many years, has been, by the statutes of this state, lodged exclusively in the board of county commissioners of Pierce county."

In deciding the case, it is assumed, of course, according to the facts in the case, that the Washington Navigation Company, a certified public carrier, is operating, and for a number of years has operated, the ferries involved.

In 1920, in the case of *State ex rel. Allen v. Public Service Commission,* 111 Wash. 294, 190 Pac. 1012, it was decided that the public service commission act of 1911 did not repeal, and did not intend to repeal, any part of the ferry law over which local authorities had jurisdiction. In 1925, in the case of *Nearhoff v. Department of Public Works,* 134 Wash. 677, 236 Pac. 288, it was held that a statute providing that county commissioners might grant a franchise to operate a

ferry across any lake or stream within a county, did not authorize the county to grant a franchise for a ferry across waters forming the boundary line with another county. It was further held that a statute authorizing a county to operate a ferry across boundary line waters did not authorize the granting of a franchise therefor to an individual. It was further held that statutes providing for the construction and maintenance of ferries by the joint action of two counties did not authorize a franchise granted by one county. It was further held that a statute authorizing county commissioners to fix rates for ferries ''now established'' had no application to ferries established after the enactment of that law.

Evidently, by that time the jurisdiction and regulatory authority over ferries and the rates and charges for such services had become complicated and unsatisfactory, so that the next legislature (1927) determined upon a change in the jurisdiction over, and control of, all steamboat companies operating any vessel or ferry, for the public use, for hire, and enacted chapter 248, Laws of 1927, p. 382, Rem. Rev. Stat., §§ 10361-1, 10361-2 [P. C. §§ 5552-1, 5552-2], amending the 1911 public service commission law, the first of which amendatory sections is as follows (so far as the same is pertinent to the present case):

''No steamboat company shall hereafter operate any vessel or ferry for the public use for hire between fixed termini or over a regular route upon the waters within this state, including the rivers and lakes and Puget Sound, without first applying for and obtaining from the Department of Public Works a certificate declaring that public convenience and necessity require such operation: . . .''

Thus, as counsel for plaintiff say in their brief:

''In 1927, the legislature of the state of Washington amended the public service commission law by includ-

ing, within the jurisdiction of the department of public works of the state of Washington, steam boats and ferries.''

It may be said that evidently that was the primary purpose for the amendment. Counsel then continue with an erroneous argument by saying: ''Excepting therefrom [jurisdiction of the department], however, operations wholly within the limits of a county;'' relying for that argument and assertion upon the proviso in the section, as follows:

''Provided, that nothing herein shall be construed to affect the right of any county within this state to construct, condemn, purchase, operate or maintain, itself or by contract, agreement or lease, with any person, firm or corporation, ferries or boats across or wharfs at or upon the waters within this state, including rivers and lakes and Puget Sound, provided such operation is not over the same route or between the same districts, being served by a certificate carrier, *nor* shall this act be construed to affect, amend or invalidate any contract entered into prior to January 15, 1927, for the operation of ferries or boats upon the waters within this state, which was entered into in good faith by any county with any person, firm or corporation. . . .'' (Italics ours.)

██ The proviso is divisible into two parts, separated by the word ''nor.'' The first member of the proviso is:

''That nothing herein shall be construed to affect the right of any county within this state to construct, condemn, purchase, operate or maintain, itself or by contract, agreement or lease, with any person, firm or corporation, ferries or boats across or wharfs at or upon the waters within this state, including rivers and lakes and Puget Sound, provided such operation is not over the same route or between the same districts, being served by a certificate carrier.''

That clause is not applicable here, because the pleadings in the case in no manner whatever present the

question of the right of Pierce county to own or operate, directly or indirectly, any ferry or boat over any route not being served by a certificate carrier.

However, because there are outstanding what are claimed to be good faith contracts entered into between the county and the navigation company prior to January 15, 1927, for the operation of these ferries by the navigation company, it is contended that the second member of the proviso applies; it being as follows:

"Nor shall this act be construed to affect, amend or invalidate any contract entered into prior to January 15, 1927, for the operation of ferries or boats upon the waters within this state, which was entered into in good faith by any county with any person, firm or corporation."

The character of such contracts, whether affecting proprietary rights of the county or purporting to regulate rates, fares and services, is immaterial in the present controversy. We are dealing here with the question of *jurisdiction of the department* under the amendatory act of 1927. If the county has any outstanding, enforceable proprietary contract rights, they can be enforced just as well where the carrier is under the jurisdiction of the department. If the contract or contracts purport to affect the rights of the public with respect to rates, charges and facilities charged and furnished by the Washington Navigation Company, the answer is that such contracts between a municipality and a common carrier or public utility are subject to the reserved or police power of the state, under which the legislature may give jurisdiction to a state department, such as the department of public works, notwithstanding such prior contracts.

This matter seems to have been fully considered and determined heretofore by our decisions which are re-

ferred to in the decision by the supreme court of the United States in *Denney v. Pacific Tel. & Tel. Co.,* 276 U. S. 97, 48 S. Ct. 223, 72 L. ed. 483. That case was decided in 1928. It arose in this state. It was stated by the court that, in deciding such cases, the Federal courts will ascertain the powers and duties of the commission and the effect of its orders, upon a consideration of the local constitution and statutes and the construction placed upon them by the state courts. It was held that under the public service commission law of this state an order of the department approving and ordering future observance of telephone rates higher than those fixed in franchises granted the company by the three cities interested, prior to the enactment of the public service commission law of 1911, had the effect of terminating the franchise rates.

In discussing the question, the court said:

"Much consideration was given to the Public Service Law by the Supreme Court in *State ex rel. Spokane v. Kuykendall,* 119 Wash. 107, 111 (1920). There a gas company operating in Spokane under a franchise which prescribed maximum rates asked for increased rates. The Commission disapproved the proposed schedule but permitted the company to charge rates declared to be just, reasonable and sufficient. These exceeded the ones theretofore charged and were above the maximum permitted by franchise. The Court said:

" ' . . . By the act of 1911 (Laws of 1911, p. 561, § 34) the terms of a franchise contract like the one in question here are binding upon the parties until the department of public works (heretofore the public service commission) has made an order directing a departure therefrom; and, without question, the department has the right and power to order a departure. *State ex rel. Ellertsen v. Home Tel. & Tel. Co.,* 102 Wash. 196, 172 Pac. 899. In the case of *State ex rel. Webster v. Superior Court,* 67 Wash. 37, it was decided that the public service commission law placed the en-

tire subject of rate regulation under the control of the commission; that no contract between a city representing the public and a public service company would be allowed to interfere with that control, and by way of application of the rule, it was decided in that case to be the duty of the commission to the company to fix a rate which was sufficient (a rate that would afford a fair interest return on the investment), in spite of the franchise contract fixing rates which were too low. That, in legal effect, is what has been done in the present case.' "

Such having heretofore been the uniform holding of this court, it must be held that, under chapter 248, Laws of 1927, p. 382, Rem. Rev. Stat., §§ 10361-1, 10361-2 [P. C. §§ 5552-1, 5552-2], the public service commission was given regulatory power and authority over the Washington Navigation Company's operations over the ferry routes in question.

Application for writ of prohibition denied.

MILLARD, C. J., MAIN, TOLMAN, BEALS, BLAKE, GERAGHTY, and STEINERT, JJ., concur.